# EXHIBIT A

ARTnews Est. 1902



# Gallerist Accuses Christie's of Selling Him a Fake Basquiat

**BY DANIEL GRANT**
October 2, 2007 11:33am

NEW YORK—Manhattan gallerist Tony Shafrazi has filed a $7 million lawsuit against Christie's in the Supreme Court of the State of New York, alleging he was sold a painting by Jean-Michel Basquiat (1960-88) that the auctioneer knew was a forgery.

Shafrazi asserts in the Sept. 7 complaint that just days before the Feb. 23, 1990, sale, Christie's staff had been told by Basquiat's father, Gerard Jean-Baptiste Basquiat, and John Cheim, co-owner of the New York gallery Cheim & Read, that the work in question was not authentic.

At the time of the sale, the Authentication Committee of the Estate of Jean-Michel Basquiat had not yet been established. Gerard Basquiat was then administrator of his son's estate and later became chairman of the authentication committee, a position he still holds. Cheim was then director of the Robert Miller Gallery, New York, which then represented Basquiat's estate. Cheim is also a member of the authentication board. He did not return calls from ARTnewsletter seeking comment on the matter.

Speaking for Christie's, a spokeswoman said, "We believe the case has no merit."

According to Shafrazi's complaint, a few days before the sale Gerard Basquiat and Cheim "viewed the painting at [Christie's] and . . . informed [Christie's] in words and in substance that the Painting was a counterfeit and/or fake and requested that [Christie's] withdraw the Painting from Auction or take appropriate action." Shafrazi claims this information was "unknown to plaintiffs and intentionally concealed" by Christie's.

Your Privacy Rights

Penske Media Corporation (PMC) uses first and third-party technologies to enable PMC and third-parties to collect information about you and your interactions with our sites and services (including clicks, cursor movements and screen recordings). Learn more HERE. By continuing to use our sites or services, you agree to our Terms of Use (including the class action waiver and arbitration provisions) and Privacy Policy, which have recently changed.

Neither Shafrazi nor his lawyer Aaron Golub would comment on the lawsuit.

According to the complaint, in or about mid-2006, in preparation for an exhibition (Sept. 2006-January 2007) of Basquiat's work to be held in Milan, Italy, Orsi submitted an application to the Basquiat committee to authenticate the painting; and on October 5, 2006, the committee stated in a letter addressed to Shafrazi's gallery that "the painting was not a work by [Basquiat], and [Shafrazi] was advised by [Gerard Basquiat] that he and [Cheim] advised [Christie's] Contemporary Art department," that the work was not authentic.

Shafrazi and Orsi are asking the court for $2 million in damages. They base their claim on the steep increase in the market for Basquiat's work; they also seek $5 million in "exemplary" damages.

Although the statute of limitations—currently six years— would have run out long ago, the plaintiffs might be entitled to collect if they could prove that Christie's knew at the time of the auction that the work was a fake.

ARTnews is a part of Penske Media Corporation. © 2023 Art Media, LLC. All Rights Reserved.
Powered by WordPress.com VIP

Your Privacy Rights

Penske Media Corporation (PMC) uses first and third-party technologies to enable PMC and third-parties to collect information about you and your interactions with our sites and services (including clicks, cursor movements and screen recordings). Learn more HERE. By continuing to use our sites or services, you agree to our Terms of Use (including the class action waiver and arbitration provisions) and Privacy Policy, which have recently changed.

The New York Times | https://www.nytimes.com/2022/07/06/arts/design/chagall-sothebys-expert-panel.html

# Her 'Chagall' Is Headed for the Trash. How's That for Caveat Emptor?

Stephanie Clegg paid $90,000 for a Marc Chagall painting at a Sotheby's auction in 1994. It was reappraised for $100,000 in 2008. Now an expert panel in France wants to destroy it as a fake.

**By Colin Moynihan**

July 6, 2022

The question of whether a valuable artwork is genuine can be surprisingly fluid, changing over time based on evolving and sometime competing evaluations.

In 1973, for example, the Metropolitan Museum of Art reattributed roughly 300 paintings in its collection, including works long thought to have been created by masters such as Rembrandt, Goya, Vermeer and Velázquez.

"I believe that attributions are like medicine or any field in which knowledge is constantly changing or advancing," offered Everett Fahy, the Met's curator of European paintings at that time.

Some 37 years later, the museum decided it had actually been right the first time around, and flipped back the attribution for one of those works, a portrait of Phillip IV by Velázquez.

But this sort of history is of little solace to Stephanie Clegg, who paid $90,000 for a painting attributed to Marc Chagall at auction at Sotheby's in 1994, just nine years after the artist's death.

Two years ago, when she was looking to sell works from her collection, Sotheby's suggested it might be a good time to auction her Chagall, among others, Ms. Clegg said. But the company told her it would have to send the work to France for authentication by a panel of Chagall experts.

Sotheby's described the review as a formality, Ms. Clegg said, and she agreed, deciding that she had little reason to worry. The auction house, after all, had sold the work at auction as a Chagall and raised no doubt as to its attribution in 2008 when it reappraised the watercolor at a value of $100,000.

But, to Ms. Clegg's dismay, the expert panel in Paris declared her Chagall to be fake, held onto it and now wants to destroy it.

When she complained to Sotheby's, the auction house said there was little it could do, saying its guarantee of authenticity was good only for a time. The company has offered her an $18,500 credit toward their fee on any future sales of artworks she owns, a gesture that she calls inadequate.

"I trusted them through all those years," Ms. Clegg, 73, said in an interview. "They were supposed to be reputable experts and I relied on their expertise."



An expert panel in France that authenticates Chagall works said that Ms. Clegg's painting included "iconographic elements" of the artist's work but had not been created by the artist.

Now Ms. Clegg is in a standoff. Through her lawyer, she has asked Sotheby's for $175,000. The auction house says there is no legal basis for that request and that the discount it has offered on future sales would match the fee it earned from the 1994 sale of the painting.

"Given that the initial sale took place well over twenty years ago, we are far outside the period of time during which Sotheby's guaranteed the authorship of the work and would have had any recourse with the seller," an auction house executive told Ms. Clegg in a 2020 letter.

Among the vagaries that make the art world such a compelling, if risky, marketplace is the fact that a change in attribution can sink the value of one work, or swell the value of another. Case in point: the "Salvator Mundi," which reportedly sold at auction in 2005 for $1,175 when it was thought to be by a nobody, and then soared to sell for $450 million in 2017, after several experts decided it was the work of

Leonardo da Vinci.

Auction houses have sought to reduce their exposure to unfavorable changes in attribution by limiting the time they will guarantee that a work is genuine. In Sotheby's case, it tells buyers that it will warrant the work for five years. (Art galleries can set terms of sales in a contract, but are generally bound by the Uniform Commercial Code, which gives buyers four years to sue on the grounds that the authorship of a work was inaccurate or misrepresented.)

Ms. Clegg contends Sotheby's bears more responsibility than it is accepting for the situation she is in, given its extensive involvement with the painting — as the original auction house, subsequent appraiser and recent adviser on its potential resale. Earlier this year her lawyer, Carter A. Reich, accused the auction house in a letter of "breach of contract, fraudulent misrepresentation, negligence and breach of fiduciary duty."

Lawyers for Sotheby's have denied all those claims, arguing that the auction house acted responsibly and in accord with its standards and procedures.

Ms. Clegg has held onto the page from the 1994 Sotheby's catalog that advertised the work, a signed watercolor and gouache on paper titled "Le couple au bouquet de fleurs." The catalog said Chagall had created it around 1950 and it listed the painting's previous owners as L. Praeger, Galerie Pétridès, both of Paris; a private collection; and then Achim Moeller Fine Art Limited in New York.

In an email message, Achim Moeller said he had no memory of being involved with that work but added through his lawyer that he would research his gallery records.

Sotheby's pointed out in a statement that, while it is rare, there are occasions when new and revised scholarship results in works being deemed inauthentic, something the auction house does not make assurances against.

"Sotheby's respects and maintains the confidentiality of its consignors and buyers, and does not comment on matters that are not of public record," the statement said, adding: "This particular work was known to the market, and was traded multiple times prior to the auction in 1994."



A page from the 1994 Sotheby's catalog on which the auction house identified the painting as a Chagall and listed a provenance for the work.

The Chagall hung for years on the wall of the bedroom that Ms. Clegg shared with her husband, Alfred John Clegg, before going into storage when she moved to a smaller home. That's where it was, she said, when Sotheby's suggested in early 2020 that if she were interested in selling items, her Chagall, among others, might do well. The work was subsequently shipped to the Comité Marc Chagall, a panel of experts that was founded in 1988 and which makes decisions on the authenticity of works attributed to the artist.

In late 2020, the panel released its findings regarding her work. In a letter to Ms. Clegg, Meret Meyer, one of Chagall's granddaughters and a member of the panel, reported that it had unanimously found the work to be inauthentic, adding that it is an amalgam of several other works including "Le couple au bouquet," from about 1952, and "Les amoureux au cheval" from 1961.

Ms. Clegg's painting included "recurrent iconographic elements of Chagall's work," including a bouquet, lovers, a horse profile, a rooster profile, a village silhouette and a crescent moon, the committee wrote, but those lacked "real presence," according to a translation provided by Ms. Clegg's lawyer. The letter went on to say that Chagall's heirs were requesting the "judicial seizure" of the painting "so that the work may be destroyed."

In France, courts have recognized the authority of expert panels to destroy works determined to be counterfeit.

Nearly a decade ago, the Chagall panel moved to destroy a work, "Nude 1909-10," that a British businessman, Martin Lang, had bought in 1992 for 100,000 British pounds, thinking it was by Chagall, the BBC reported. Mr. Lang objected, but then tweeted in early 2014: "I have decided not to fight this expensive court battle! These committees lack human compassion!"

Thomas C. Danziger, an art market lawyer in Manhattan who is not involved in Ms. Clegg's case and has not examined her painting, said the authority of a panel like the Chagall committee is absolute when it comes to the market.

"You could have a photograph of Chagall painting this," he said, "and have his own written testimony that he did, but if the Comité says it's not by the artist then, for the purposes of the art market, it's not by the artist."



Marc Chagall in 1950 when the watercolor was said to have been created. Bettmann/Getty Images

Given that history shows attributions can change, the idea of destroying an artwork strikes some experts as too final.

"If the premise is that the authenticity can change when experts change, destroying a painting takes away that possibility," said Jo Backer Laird, a lawyer who spent 10 years as general counsel for Christie's auction house.

Several authentication committees have been sued after ruling that a work was not genuine and panels that officially reviewed the works by Jean-Michel Basquiat, Andy Warhol and Jackson Pollock have disbanded. Ms. Clegg's lawyer, Mr. Reich, declined to comment on the possibility of suing the Chagall committee.

Ms. Clegg has instead pursued Sotheby's. In a letter to the auction house, Mr. Reich wrote that it had "falsely and recklessly assured" her that the committee rarely seized works and that she had nothing to worry about. He also wrote that Sotheby's had told Ms. Clegg "additional research would be conducted" before the painting was sent to the committee, but that no research was performed.

In rejecting the claim that it bears responsibility for Ms. Clegg's situation, Sotheby's isn't relying solely on the fact that the auction house's warranty of authenticity had expired. Sotheby's also has said through its lawyers that it apprised Ms. Clegg in writing of the risks of submission to the committee. They added that any statements to Ms. Clegg about the likelihood of seizure by the Chagall panel were only expressing expectations, noting that she had signed a release indemnifying Sotheby's from any claims connected to that submission.

Sotheby's lawyers further argued that the committee had not begun regularly issuing certificates of authenticity until the mid- to late 1990s, suggesting that the auction house had not been able to seek that level of certainty before the 1994 auction.

Mr. Reich said he questions that assertion, given the fact that the committee's letter to Ms. Clegg included a line that read: "It is pointed out that in 1994 the MARC CHAGALL COMMITTEE was not brought to examine the work presented either before or after the sale."

Ms. Meyer of the committee did not address a question about whether the panel was regularly authenticating works in 1994.

Mr. Reich said that, even if the committee was not then regularly authenticating work, it certainly was by 2008, when Ms. Clegg, who goes by the name Stevie, asked Sotheby's for an updated evaluation of the Chagall.

"How could Sotheby's appraise the work for $100,000 (or for any amount?) without mentioning anything to Stevie about the need to have it authenticated?" he asked.

Sotheby's said that documents related to that appraisal made it clear that its valuations were provisional and subject to further research and authentication.

For Ms. Clegg the matter boils down to a simple formulation.

"I bought this painting through Sotheby's as an authentic painting at the authentic price," she said. "I think they should stand by that."

A version of this article appears in print on , Section C, Page 1 of the New York edition with the headline: When a Chagall Is Challenged