UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-80099-AMC

UNITED STATES OF AMERICA

v.

DANIEL ELIE BOUAZIZ,

    Defendant.
_____/

### GOVERNMENT'S SENTENCING MEMORANDUM AND RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR VARIANCE

    Comes now the United States, by and through the undersigned Assistant United States Attorney, hereby files its Sentencing Memorandum in advance of Defendant Daniel Elie Bouaziz's sentencing hearing, on May 30, 2023, and in response to the defendant's Sentencing Memorandum and Request for Variance from the Advisory Sentencing Guideline as Calculated in the PSI[1] Report (the "Instant Motion") (DE 89).

    The defendant previously filed Objections and Factual Clarifications (DE 84) to the draft Presentence Investigation Report ("PSR") (DE 74).  The government filed its response (DE 85). Thereafter, probation filed an Addendum to the PSR (DE 88-1).  The government reviewed the PSRs and addendum in this matter (DE 74 and 88).  On May 25, 2023, the defendant filed the Instant Motion.  Today, May 26, 2023, the defendant filed approximately forty-six letters in support of his sentencing hearing (DE 90 and 90-1).  This afternoon, the defendant filed a second notice of additional letters in support of his sentencing hearing (DE 91 and 91-1).

---

[1] Probation refers to the defendant's presentence report as a ("PSR") (DE 88-1).

I. **Instant Motion**

By his own admission, the defendant sold counterfeit artwork and altered the provenance of pieces of art that he sold to customers out of his two upscale art galleries in Palm Beach County (DE 89 at 4, 6). Further, as reflected in the factual proffer in support of the defendant's guilty plea, Bouaziz stipulated and agreed that if this matter had proceeded to trial the United States would have proven that he laundered money he received from a victim to whom he had sold counterfeit art, to include pieces purportedly by Andy Warhol ("Warhol") (DE 71). As indicated in the proffer, Bouaziz had told the victim that the works he was selling, for between $75,00 and $240,000, were authentic, original Warhol pieces, and that some of the pieces were signed by the artist (id.). Relying on Bouaziz's false and fraudulent representations, the victim purchased artwork from the defendant (id.).

The defendant accepted responsibility for his crimes in the PSR (DE 88 ¶120), indicated he will reiterate his remorse when he appears before this Court, and asks this Court to impose a reasonable sentence for his criminal conduct (DE 89 at 2, 6).

The parties agree that the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in Title 18, United States Code, Section 3553(a)(2). The Court, in determining the particular sentence to be imposed, shall consider –

(1) the nature and circumstances of the defendant's offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed:
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with need educational or vocational training, medical or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;

(4) the kinds of sentence and sentencing range established..;
(5) any pertinent [Sentencing Commission] policy statement...;
(6) the need to avoid unwarranted sentence disparities among the defendant with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

In his filing, the defendant moves for a downward variance (DE 89). The government supports a sentence that reflects the parties' recommended loss enhancement. On February 21, 2023, Bouaziz pled guilty to money laundering (Count 17 of the federal indictment), in violation of 18 U.S.C. § 1957 (DE 72). As part of the plea agreement, the government and the defendant agreed to jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:

(1) <u>Loss</u>: That the relevant amount of actual, probable or intended loss under Section 2B1.1(b)(1) of the Sentencing Guidelines resulting from the offense committed in this case is more than $550,000 but not more than $1,500,000 (DE 72 at ¶ 8(1)).

The government believes that a sentence, that reflects the agreed upon loss amount in this case, is just. Accordingly, with a base level of 6; a 14-level increase for an agreed upon loss of more than $550,000 and less than $1.5 million; a 2-level increase for an offense involving ten or more victims; a 1-level increase for the 18 U.S.C. §1957 conviction; and a 3-level decrease for acceptance of responsibility, Bouaziz's total offense level would be 20 and the defendant's guideline range would be 33-41 months in prison.[2] In the plea, the government agreed to recommend a sentence at the low-end of the guideline range (DE 72).

---

[2] In the event that the Court does not agree with the parties' loss recommendation, and imposes the greater loss enhancement, the government will respectfully move for a downward variance - solely to reflect the guideline calculations for a loss of more than $550,000 and less than $1.5 million – in order to uphold the plea agreement.

3

## II.    PSR – Offense Conduct

On May 16, 2023, Bouaziz filed a motion (DE 84), wherein he objected to the PSR's loss computation (based on the $22 million dollar art package Bouaziz discussed with the undercover) and finding that he should receive a 2-level enhancement for 10 or more victims (DE 84). The government agreed with the defendant that, pursuant to the parties' recommendation in the plea agreement, the loss enhancement should be lowered (DE 85). The government argued that the 2-level victim enhancement should apply because the defendant victimized eleven customers through his art fraud scheme (id). The defendant had no other substantive objections. Accordingly, the government submits that Bouaziz thereby agreed to his offense (and relevant) conduct, as outlined in the PSR (¶¶15-106).

As described in the PSR, art dealer Bouaziz, a French and Israeli citizen born in Algeria, who was admitted to the United States as a visitor and without work authorization, sold and/or attempted to sell fake (fraudulent) art to unsuspecting victims from his businesses, Danieli Fine Art and Galerie Danieli on Worth Avenue, and laundered the illicit sales proceeds. Bouaziz represented to buyers that he was selling original/authentic pieces rendered by prominent artists, such as Jean-Michel Basquiat ("Basquiat"), Andy Warhol ("Warhol"), Banksy, and Roy Lichtenstein ("Lichtenstein"). Bouaziz purchased and acquired low-cost pieces that were not original works of art (ie: reproductions) from sources, to include online auction sites, and then re-sold the pieces as originals, for drastically increased prices. Bouaziz represented to the victims that he was an official appraiser and art expert. Bouaziz knew some of the pieces he sold were not genuine and original pieces but were fabricated pieces that were "after," "attributed to," "in the manner of the artist," unauthorized prints, and/or other fraudulent artwork that were not rendered directly by the

prominent artists.[3]

To make the fraudulent art appear authentic, Bouaziz made false representations to buyers regarding the provenance[4] and originality of the art. To support these false statements, Bouaziz, on occasion, for example: (1) provided buyers with invoices and documents that included false provenance information; (2) omitted descriptors that were included with low-cost online purchases, to include "after" and " reproduction" language; (3) sold buyers artwork on which an artist's signatures had been added; and (4) provided buyers with certificates of authenticity that included false assertions and appraisals which had a stamped signature block that read "Daniel Bouaziz, Certified International Fine Art Appraiser."

In addition, Bouaziz sold fraudulent art to an undercover agent for $25,000 (DE 74: ¶¶ 21-38) and had discussed another sale to the undercover, of an artwork collection that was determined to include fraudulent pieces, for $22 million dollars (id. at ¶¶39-48). Law enforcement executed the search warrants on Bouaziz's galleries (on or about December 15, 2021) and seized evidence (artwork) before the sale could be effectuated. Some of the artwork that was listed for sale to the undercover agent was fraudulent.

III. **Bouaziz, His Victims/Customers and the Community**

Bouaziz painted a picture of himself that he wanted others to see and believe. However, what Bouaziz sold to his customers and the Palm Beach community was not a true and authentic

---

[3] As described in the PSR, in the art world, the term "after" is used to describe a copy of an original artist 's work (DE 74: ¶ 38). "Attributed" indicates a lack of 100% certainty that a work is by the hand of the artist (id. at ¶ 71). "Manner of the artist" indicates that the work was done in the style of the artist but at a later date (id.).

[4] As described in the PSR, the provenance refers to the history of the ownership of a painting (DE 74: ¶ 17). A seller may misrepresent the provenance in an attempt to bolster the appearance of authenticity of the artwork (id.). The government submits that the provenance of a piece can also affect the value of the work of art.

version of the man who lived a life of luxury while operating his Worth Avenue galleries. Bouaziz won people over with his philanthropy, high-end vehicles, ties to the local synagogue, invitations to lunch, history as an opera singer, art events, and more. But, while Bouaziz may been generous to some, as countless people claim in their letters of support to this Court, he was defrauding others.

A drug dealer is not absolved for using the money he makes selling cocaine to buy diapers for the neighborhood children. In the same vein, a fraudster cannot negate the money he stole from victims simply because he pays some people back and/or donates money to others.

Bouaziz defrauded his customers, identified in the PSR as J.S. and S.H. (Victim 1), P.D. (Victim 2), D.N. (Victim 3), L.O. (Victim 4), L.M. (Victim 5), M.M. (Victim 6), L.G. and H.G. (Victim 7), J.F. (Victim 8), F.S. (Victim 9), J.R. (Victim 10), and E.H. (Victim 11) and should be held accountable. Bouaziz's crimes stained the art industry and caused victims to express concern about purchasing art again, given the lack of confidence they now have that a piece of art is genuine. Regardless of whether Bouaziz allowed people to return art they purchased, he should be held responsible for the losses and victimization resulting from the defendant's fraudulent sales.

The government recognizes, in advance of sentencing, the defendant, through his attorney, has actively made efforts to repay the victims (and customers who sought to make returns). Following the search warrant, the defendant made restitution payments toward a number of victims and individuals. Since the defendant's plea, defense counsel advised the undersigned that $600,000 (from a family loan) was placed into the attorney's trust account and the monies are being disbursed to repay the remining victims (DE 89 at 4-5). The government understands that the defendant seeks to sell a property he owns (in July 2023), so that the outstanding victims can be repaid (id.). The

6

defendant has represented to the government, through counsel, that he will repay all outstanding victims (balances) within 45 days of the May 30th sentencing hearing (id. at 5).

In making its sentencing recommendation, the government has considered the defendant's background, his crime of conviction, letters of support, and the §3553 factors.  The government notes that the defendant is a 69-year old, overweight man with grown children and health issues (presumably he had health issues at the time he committed the crimes as well).  Bouaziz is not a United States citizen and will presumably be removed from the United States following the imposition of his sentence in this matter.  He has no prior criminal history.  Accordingly, the government submits that the defendant is deserving of a federal prison sentence at the low-end of the sentencing guidelines (as those guidelines reflect the parties' recommended enhancement for losses of more than $550,000 but not more than $1,500,000).

*[The remainder of this page was intentionally left blank.]*

## IV. CONCLUSION

Wherefore, the government respectfully requests that this Court impose a reasonable sentence that reflects the considerations and position outlined above.

                                          Respectfully submitted,

                                          MARKENZY LAPOINTE
                                          UNITED STATES ATTORNEY

By:    /s/ Sarah J. Schall
          SARAH J. SCHALL
          ASSISTANT UNITED STATES ATTORNEY
          District Court No. A5501805
          500 South Australian Avenue, Suite 400
          West Palm Beach, Florida 33401
          Tel: (786) 360-9896
          sarah.schall@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 26, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ Sarah J. Schall
SARAH J. SCHALL
Assistant United States Attorney